James A. Ryan, Major General The Adjutant General Military Department of Arkansas Camp Robinson North Little Rock, AR 72118-2200
Dear Major General Ryan:
This is in response to your request for an opinion on several questions concerning a proposed Reciprocal Fire Protection Agreement ("Agreement") between the Fort Smith Arkansas Airport Commission ("FSAC") and the 188th Tactical Fighter Group, Arkansas Air National Guard ("National Guard"). You have asked the following questions in this regard:
 Does current legislation, Federal Aviation Administration regulations, and this agreement place tort liability for any loss, damage, personal injury, or death in the Fort Smith Airport Commission as owner/operator of the Fort Smith Municipal Airport; or should The Adjutant General (Agency Director) require liability insurance on equipment/employees prior to completion of the Air National Guard Agreement to protect the State/employees from possible tort claims?
We must conclude, based upon the information supplied with your request, that the answer to your first question is "no." We have found no state legislation suggesting that the FSAC is to be held solely liable in this regard. Nor does Federal Aviation Regulation Part 139 (14 CFR Part 139), under which the National Guard has agreed to operate, appear to address this matter. Similarly, the Agreement does not appear to place all liability in the FSAC. Indeed, paragraph 5 of the Agreement must be noted wherein it states: "Each party waives all claims against the other party for compensation for any loss, damage, personal injury, or death occurring as a consequence of the performance of this agreement."[1]
Although there is legal correspondence indicating that the FSAC could agree to assume the tort liability of the National Guard, so long as the agreement was made prior to the injury or loss, we have not been supplied with evidence of such an agreement.
With regard to the potential liability of the State of Arkansas for loss, damage, personal injury, or death occurring as a result of the performance of the agreement by the National Guard, it must be initially recognized that the state has not, as a general matter, waived its constitutional right to sovereign immunity. Const. Ark. art. 5, 20. It should also be noted that officers and employees of the State of Arkansas are immune from civil liability for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment. A.C.A.19-10-305. An employee who has liability insurance may, however, be sued directly and the insurance company held liable for damages caused by the employee's negligent acts, even though the employee was acting in his official capacity. See Carter v. Bush, 283 Ark. 16,677 S.W.2d 837 (1984) and Bly v. Young, 293 Ark. 37,732 S.W.2d 157 (1987). Thus, if individuals are insured, liability may result to the extent of the insurance. The statutory immunity under 19-10-305 does not apply up to the extent of insurance coverage. A state employee may also be sued in federal court for denying an individual his constitutional rights under color of state law. See 42 U.S.C. § 1983.
To the extent, therefore, that the National Guard is subject to liability through the State Claims Commission, a decision may be indicated regarding the benefits of insurance coverage. This is, however, a business decision which will in all likelihood turn on financial and other practical considerations when weighing the benefits of obtaining insurance versus remaining self-insured. This office is not in a position to weigh these factors, which involve economic concerns to be viewed in the context of the National Guard's actual operations. The foregoing provides an analysis of the legal factors. The ultimate determination involves matters of policy which are not properly within the scope of an Attorney General opinion.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
[1] This language is apparently drawn from federal legislation. Title 42, Chapter 15A ("Reciprocal Fire Protection Agreements") of the United States Code states in pertinent part that "[e]ach such agreement shall include a waiver by each party of all claims against every other party for compensation for any loss, damage, personal injury, or death occurring in consequence of the performance of such agreement."42 U.S.C. § 1856a. It should be noted, finally, that any claim for injury resulting from performance of the Agreement could be brought before the State Claims Commission. See A.C.A.19-10-210 et seq. The claimant must exhaust all claims against insurers before the Commission can hear the claim. A.C.A.19-10-302. No subrogation claims can be heard. A.C.A.19-10-304. And the Commission must reduce awards where insurance proceeds have been paid under a policy, the premiums on which were not paid by or on behalf of the claimant. A.C.A. 19-10-303.